```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

BARRY BURCHETT,              )
                             )
     Plaintiff,              )   Civil Action No. 07-415-JMH
                             )
v.                           )
                             )
UNUM LIFE INSURANCE COMPANY  )       **MEMORANDUM OPINION**
OF AMERICA,                  )            **AND ORDER**
                             )
     Defendant.              )

                  **       **       **       **       **

Plaintiff Barry Burchett seeks review of the denial of benefits under a long term disability plan established by his former employer, Keightley & Parsley, P.S.C. (hereinafter, "Keightly & Parsley"), which is funded by a group insurance policy provided by Defendant Unum Life Insurance Company of America (hereinafter, "Unum Life"). Plaintiff has filed a Motion to Reverse the Administrative Decision of Unum Life Insurance Company of America [Record No. 18]. Defendant Unum Life has responded [Record No. 19], and Plaintiff has filed a Reply Memorandum in Support of his Motion [Record No. 20]. The Court being sufficiently advised, this matter is ripe for decision.

**I.   BACKGROUND**

Burchett was employed as an emergency room physician by Keightly & Parsley until his termination in 2003, during which time he participated in the medical group's long term disability plan (hereinafter, "Plan"). The Plan, as it existed in 2003, provided

benefits for eligible participants for total disability "due to injury or sickness," defined in relevant part as the "complete inability to perform the material duties of your regular occupation."  [Administrative Record, filed under seal, at UACL 165-66.]

Eligibility was defined, as follows:

> You are eligible for insurance if you are a full-time active employee regularly working in an eligible class at least 30 hours per week during your employer's work week.

[*Id.* at UACL 167.]  In order to qualify for benefits, one's "total disability" had to begin while the eligible participant was insured [*Id.* at UACL 166], and the Plan provided that "total disability must also require the regular attendance of a legally qualified physician."  [*Id.* at UACL 165.]

The Plan provides for termination of insurance, as follows:

> Your insurance will terminate at 12:00 midnight on the earliest of the following occurrences:
>
> (1) On the date the employer's participation in the trust terminates;
>
> (2) On the date you cease to be in a class of employees eligible for insurance;
>
> (3) On the date termination of employment occurs.  This will be the date that you cease to be actively at work except that:
>
> > (a) if absence from active work is due to temporary layoff or leave of absence, employment, for the purpose of insurance, may be deemed to

-2-

>>continue until terminated by your employer. However, this continuation cannot extend beyond the end of the month following the month in which the temporary layoff or leave of absence began, or

>(b) if absence from active work is due to sickness or injury resulting in your total disability, employment, for the purpose of insurance, may be deemed to continue during

>>(I) the elimination period,

>>(ii) the end period for which your insurance is being continued under the Waiver of Premium provision;

>(4) The end of the period for which you have made any required contribution.

[*Id.* at UACL 160.]

Keightly & Parsley informed UNUM Life that Dr. Burchett last worked on July 27, 2003, and was terminated effective July 31, 2003. [*Id.* at UACL 452.] There is no dispute that Plaintiff last worked a shift on July 27, 2003, but Burchett contends that he went on a short vacation during the first week of August 2003. [*Id.* at UACL 446.] Only upon his return did he find that a letter from his colleagues, dated August 6, 2003, was waiting for him. That letter stated:

>The full partners met Monday [August 4, 2003] and voted to request your formal resignation effective on or before July 31, 2003. We have covered your remaining August shifts.

>We consider you a good physician who in a lower volume and acuity environment would

-3-

> excel.  However, your performance in our emergency department has not met the standards of our group for some time.
>
> As discussed previously with you, we much prefer the path of resignation as mutually beneficial.

[*Id.* at UACL 455.]

There is no evidence in the record submitted to this Court to indicate when or even if Burchett tendered the requested "formal resignation," but it is undisputed that he never actively performed services for Keightly & Parsley after July 27, 2003, when he claims that he left for vacation."[1]  [*Id.* at UACL 334.]

In September 2003, Burchett submitted a disability claim form to Unum Life, stating that he was "psychologically unable to perform" his occupational duties.  [*Id.* at UACL 334.]  The Attending Physician's portion of the form was completed by Marc Wright, a psychiatrist.[2] [*Id.* at UACL at 336.]  Wright stated that

---

[1] Burchett avers that, after he received this letter, he went on a leave of absence until his resignation and separation agreement was finalized in the middle of September 2003.  In support of this contention, Burchett relies on the fact that his employers continued to pay his disability insurance premiums to UNUM through the end of September 2003.  The Court is not persuaded that the payment of his premiums is meaningful as regards his employment status or his coverage under the Plan, as Burchett suggests. *See*, *e.g.*, *Roeder v. ChemRex, Inc.*, 963 F. Supp. 817, 825 n. 5 (E.D. Wis. 1994) (fact that insurer accepts premiums for particular person under employer's self-accounted policy "cannot extend coverage of the policy.").

[2] The Court finds that Burchett first received formal psychiatric treatment for his allegedly disabling depression from Wright on August 25, 2003.  Indeed, when Burchett first met with

he had first seen Burchett on August 25, 2003, and had diagnosed him with "Major Depression, recurrent." [*Id.*]  Wright prescribed medication for the condition and referred Burchett for psychotherapy. [*Id.*]  Without any elaboration, Wright opined that Burchett's "Date First Unable to Work" was August 1, 2003, but identified the "Date restrictions and limitations began" as August 25, 2003.  Wright did not identify any specific restrictions and limitations but wrote that "[patien]t's current depressive state precludes his being able to return to his highly stressful job at this time."  [*Id.*]  Wright's office notes, dated August 25, 2003, provide no additional information on the onset of Burchett's depression and any restrictions and limitations other than to say

---

Wright on August 25, 2003, Burchett "denie[d] any previous psychiatric treatment."  [AR at UACL 129.]  He did the same when he first met with therapist Kristin Allen in October 2003.  [*Id.* at UACL 63.]  Burchett confirmed to a Unum Life representative in November 2003 that "he did not see a psychiatrist or other mental health professional, prior to 8/2003."  [*Id.* at UACL 447.]  He did report to the representative that he had regularly met with long-time friend Gene Brockopp, who happened to be psychiatrist, over the years, but he described those meetings as simply meeting a friend "for breakfast" and he "did not indicate [that] this friend was providing actual treatment psychotherapy."  [*Id.* at UACL 445.]  Since that time, Burchett has tried to color these meetings as psychiatric treatment for his condition, but there is no evidence in the record of any diagnosis or treatment for any disorder by Brockopp.  The record contains only Brockopp's conclusory affirmation that the two met and "worked together regarding psychological and spiritual questions and problems" on a monthly basis with no record of any diagnosis or the prescription of a specific course of treatment for Burchett by Brockopp.  [*Id.* at UACL-RSA/CRU 64.]  In the absence of any specificity regarding diagnosis or treatment of a specific condition, the Court does not consider those meetings relevant to its inquiry today.

that Burchett "appears to be debilitated by his depressive symptoms at the present time." [*Id.* at UACL 127.] Wright found only that Burchett's depressive symptoms "have been impairing his ability to perform his duties as an emergency room physician, and appear to be of such severity that they prevent his returning to this highly stressful job at this time." [*Id.*]

UNUM ultimately concluded that Burchett became disabled, if at all, on August 25, 2003, and denied coverage as that date fell outside of the period in which Plaintiff was an eligible participant in the Plan.[3] [*Id*. at UACL - RSA/CRU 12.]

## II. STANDARD OF REVIEW

This Court reviews challenges to benefit determinations "under the de novo standard, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Univ. Hosp. of Cleveland v. Emerson Elec.*, 202 F.3d 839, 845 (6th Cir. 2000). "This *de novo* standard of review applies to the factual determinations as well as to the legal conclusions of the plan administrator." *Wilkins v. Baptist Healthcare System, Inc.* 150 F.3d 609, 613 (6th Cir. 1998). In order to determine whether

---

[3] In addition to the policy at bar, Burchett had an individual disability policy of insurance ("IDI") with UNUM, a non-ERISA disability policy. In evaluating coverage under Burchett's IDI policy, UNUM found Burchett disabled and paid the full benefits. The Court understands that Burchett has never returned to work as an emergency room physician but, as of December 2005, undertook employment as an Independent Medical Examiner.

benefits were properly denied, the Court will consider the record presented to the plan administrator. *Id.* at 615. The Court is "bound by the provisions of the documents establishing an employee benefit plan 'without deferring to either party's interpretation.'" *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989) (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).

### III. DISCUSSION

"When interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law." *Cassidy v. Akzo Nobel Salt, Inc.,* 308 F.3d 613, 615 (6th Cir. 2002). As such, "courts interpret ERISA plan provisions according to their plain meaning, in an ordinary and popular sense," giving effect to any unambiguous terms. *Id.* at 617-18 (internal quotation marks and citations omitted). Giving the words of the relevant provisions of the Plan their usual and ordinary meaning, Plaintiff cannot demonstrate that he was eligible for benefits under the Plan as his employment had been terminated prior to the onset of any total disability.

As an initial matter, the Court finds that Plaintiff ceased to be "in a class of employees eligible for insurance," i.e., "a full-time active employee regularly working in an eligible class at least 30 hours per week during [Keightly & Parsley's] work week" on August 6, 2003. Even though Keightly & Parsley considered

-7-

Plaintiff's employment terminated on July 31, 2003, this Court finds that August 6, 2003, is the date of his termination for the purposes of its analysis under the Plan because it was only on August 6, 2003, after Burchett's return from a vacation, that he was informed that he was no longer to perform work for his employer.[4]  [*See* AR at UACL 455 ("We have covered your remaining August shifts.").]

Accordingly, only if Plaintiff was totally disabled, as that term is defined by the Plan, on or before midnight on August 6, 2003, would he be entitled to benefits under the Plan.  Having reviewed the entire record in this matter, the Court finds that the evidence does not support a finding that Burchett was "totally disabled," i.e., had a  "complete inability to perform the material duties of [his] regular occupation"  as an emergency room physician "due to injury or sickness" on or before August 6, 2003.  [AR at UACL 165-166; Booklet/Cert. at 77-301].

Although Wright opined that Burchett's "Date First Unable to Work" was August 1, 2003, Wright has identified the "[d]ate [that Burchett's] restrictions and limitations began" as August 25, 2003, because Burchett's "[then-]current depressive state preclude[d] his being able to return to his highly stressful job at [that] time."

---

[4]   The same letter indicates that the decision to end Burchett's relationship with Keightly & Parsley may not have been news to Burchett, as it indicates that the parties had previously discussed a resignation in lieu of termination, but those facts are not part of the record before this Court.

-8-

[*Id.*] The Court gives no weight to Wright's opinion that Burchett was unable to work on August 1, 2003, because that opinion is conclusory and unsupported by the record. Indeed, the record contains evidence that Burchett was actually performing his duties, even if not up to the standards of his partners, until he completed his final shift on July 27, 2003. He then took a scheduled vacation and, apparently, intended to return to work upon his return. It was only upon finding that his partners had asked him to resign by virtue of their August 6, 2003, letter that he found himself no longer with the option of returning to his duties. According to Wright, Plaintiff was not under any restriction or limitation on that date.

There simply is no evidence of ongoing, documented diagnosis or treatment for disabling depression prior to August 25, 2003. Even if the Court accepts that Plaintiff suffered from depression based on Burchett's anecdotal descriptions of his mental state, the fact that Plaintiff continued to work through at least July 27, 2003, and intended to continue to perform his job through at least August 6, 2003, belies his assertion that he was experiencing totally disabling depression during that time. "[I]llness is not to be equated with total disability." *See Kunstenaar v. Conn. Gen. Life Ins.*, 902 F.2d 181, 183 (2d Cir. 1990) (plaintiff was not disabled under LTD policy as he "reported to work every day" until terminated and presented no evidence that he was completely unable

to perform duties while there); see *Richardson v. Ky. Home Mut. Life Ins. Co.*, 3:97-cv-295-H, 1998 WL 34077714, *1, *6 (W.D. Ky. Dec. 7, 1998) (no coverage for plaintiff with severe kidney disease who continued working against doctor's advice until employment terminated where plan provided "coverage ends on the date the insured ceased employment"); *George v. First Unum Life Ins. Co.*, No. 93 CIV. 2916 (HB), 1996 WL 701018, *3 (S.D.N.Y. Dec. 5, 1996) ("While Plaintiff may have been depressed before . . . [his termination], a combing of the record fails to provide support for the proposition that he was unable up to that date to perform any substantial part of the material duties of his job."); *Harrigan v. New England Mut. Life Ins. Co.*, 693 F. Supp. 1531, 1535 (S.D.N.Y. 1988) (fact that plaintiff likely had brain tumor prior to his resignation irrelevant for purposes of determining coverage).

   Burchett's coverage ended when his active employment concluded on August 6, 2003 – more than two weeks before he began treatment for his alleged disability and before any limitations or restrictions on his ability to work were established by his treating psychiatrist.  In this instance, no plausible reading of the Plan's definition of "total disability," "eligibility," or "termination of insurance," supports Plaintiff's claims for LTD benefits.  As Burchett was not totally disabled by major depression while he was eligible for benefits, i.e., before his employment was terminated, his claim under the Plan was appropriately denied.

**IV. CONCLUSION**

For all of the reasons stated above, Plaintiff's Motion to Reverse the Administrative Decision shall be denied and the Administrator's denial of benefits affirmed.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiff's Motion to Reverse the Administrative Decision of UNUM Life Insurance Company of America [Record No. 18] shall be, and the same hereby is, **DENIED**; and

(2) that Defendant's denial of benefits to Plaintiff shall be, and same hereby is, **AFFIRMED**.

This the 3rd day of February, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

-11-